**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-2134

JAN S. GALLO,

Plaintiff - Appellant,

versus

US INVESTIGATIONS SERVICES, PROFESSIONAL
SERVICES DIVISION, INCORPORATED,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria. Claude M. Hilton, Senior
District Judge. (1:06-cv-00198-CMH-TR)

Argued: November 1, 2007          Decided: December 28, 2007

Before WILLIAMS, Chief Judge, and TRAXLER and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Patrick L. Abramowich, FOX & ROTHSCHILD, L.L.P.,
Pittsburgh, Pennsylvania, for Appellant. Ronda Brown Esaw,
MCGUIREWOODS, L.L.P., McLean, Virginia, for Appellee. **ON BRIEF:**
Jay D. Marinstein, FOX & ROTHSCHILD, L.L.P., Pittsburgh,
Pennsylvania; Paul N. Murphy, TIGHE, PATTON, ARMSTRONG & TEASDALE,
P.L.L.C., Washington, D.C., for Appellant. David L. Greenspan,
MCGUIREWOODS, L.L.P., McLean, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jan S. Gallo, a former employee of US Investigations Services, Professional Services Division, Inc. ("PSD"), brought this action alleging federal claims of gender discrimination, hostile work environment, and retaliation, and a state law claim for breach of contract, arising out of the termination of her employment for insubordination.

PSD is a private government contractor that provides security-related services to federal government agencies. Gallo was hired by PSD in September 2002 as a program manager for PSD's contract with the Department of the Navy Central Adjudication Facility (DONCAF), where she worked until her termination on March 7, 2005.

In May 2004, David Venturella became Gallo's immediate supervisor. By all accounts, Gallo was effective in her job, and Venturella recommended two separate promotions for her in 2004. She ultimately received the recommended promotion to Director of Operation Support and Training, which was to take effect on January 28, 2005. Her duties as program manager for the Navy DONCAF contract were slated to end as of that date.

In the months leading up to this change in duties, budget cuts had mandated a reduction in staff on the DONCAF contract, and discussions between PSD employees, including Gallo and Venturella, and Navy personnel ensued regarding what positions would remain and who would fill them. It is undisputed that in the course of

2

addressing this issue, conflicts arose between Navy employees and Gallo regarding the proper way to staff the DONCAF contract in the wake of the mandated staff reductions, mainly over who would get to make those decisions. In late January, Gallo had telephone conferences and a meeting with the Navy customers and provided them with PSD's "decision" for the staffing of the contract and advised them that she would no longer be the program manager due to her promotion. Patti Ashley and Kim Cristaudo were the primary contacts for the Navy at the time. For various reasons, they were unhappy with the decision and a follow-up meeting was demanded to discuss the staffing. Although the extent of their dissatisfaction is somewhat in dispute, it is undisputed that complaints about Gallo were relayed to Venturella at about the same time Gallo was slated to start her new position.

Upon receiving the complaints from the Navy, Venturella specifically instructed Gallo not to contact the Navy customers while he attempted "to get to the heart of [the] concerns." J.A. 1040a. Gallo vocally disagreed with Venturella's proposed course of action for handling the Navy complaint, was defensive about the matter, blamed Venturella for the problem, and embarked on a concerted effort to convince Venturella to let her directly confront the Navy clients. Venturella responded by again directing Gallo to "distance yourself from this until the dust settles" as they "need[ed] time to sort this out." J.A. 393a. Venturella, in

3

conjunction with Gallo's new position, had also assigned her a new training project at about this time. He advised Gallo that while he investigated the Navy matter, she was to "begin the training project" and he would "send . . . examples of the white papers USIS has prepared in the past" on similar matters. J.A. 393a.

Gallo also disapproved of the training project assignment and advised Venturella of her feelings in this regard as well. When Venturella refused to rescind his assignment, Gallo complained to Bill Harper, the former President of PSD and then-current Chairman of the Board, who had been a supporter of Gallo on a similar incident in the past. Gallo also persisted in her efforts to challenge Venturella's refusal to allow her to directly confront the Navy clients. On February 7, 2005, Gallo advised Venturella that "th[e] resolution would be to meet with the concerned parties so I can clear up their perceptions or any misunderstandings they may have had with regard to our recent conversations and what you have relayed to me." J.A. 562a. Venturella advised Gallo that he did not support her request for a client meeting and reiterated that Gallo was "not to have any contact (written or oral) with the" Navy clients. He also "reiterate[d] this is not a disciplinary matter and is not being treated as such. It is an operational/business decision that I have made based on the request of the customer. I understand you do not agree with the outcome,

but the course of action has been accepted and has resolved the concerns of the client." J.A. 562a.

When Venturella refused to budge, Gallo took her complaints to Human Resources and sought its permission to contact the Navy clients. Human Resources denied the request and advised Gallo that this was a business decision that would have to be addressed through her chain of command. Although Harper was not technically in her chain of command, Gallo again complained to him and now asserts that Harper authorized her to contact the Navy customer. Harper, for his part, disputes that he supported Gallo's activities regarding the training project and denies authorizing her to contact the Navy. However, it is undisputed that Gallo did not tell Venturella, Venturella's supervisor, or Human Resources of the alleged authorization, and Harper, as Chairman of the Board, was not in her direct line of supervisory authority.

As Gallo's complaints about the DONCAF matter and the training project continued, Gallo also began to raise various "workplace" complaints, asserting, for example, that she had been excluded from some emails and meetings and that the communication within the organization was unacceptable. When she was advised that there were no miscommunications or a need for a meeting about these matters, Gallo demanded a meeting with Human Resources and sent an email message to Venturella requesting that he attend the meeting since there was no "communication . . . present in this

5

organization." J.A. 1043a. Venturella responded that "[t]here will be no meeting and no more discussion on the matter." J.A. 1043a. Gallo responded by lodging a complaint of "hostile work environment" with Human Resources. She did not mention gender or age, complaining only that she could not work in an environment with "no communication, no direction, prevention from working with the Navy customer and the truth of the matter not pursued." J.A. 1043a.

On March 3, 2005, Human Resources and Venturella met with Gallo and refused to rescind the directive that she not contact the Navy client or the directive that she prepare the requested training project. Gallo then returned to her office and, in direct contravention of Venturella's repeated directives to the contrary, contacted Ashley to directly confront her about the Navy issue. As she was "headed out for the day," Gallo sent an email message to Human Resources advising that she had contacted Ashley and was told that Ashley "did not ask for [her] removal off the contract because of tone, mannerisms, or style." J.A. 406a. Gallo expressed "confiden[ce]" that HR would "speak to them and get this otherwise resolved." J.A. 406a. As an aside, Gallo added that "[s]ince this situation has taken place, I have been faced with working in a hostile work environment . . . [of] constantly excluding females from 'male' company activities." J.A. 406a.

On March 7, 2005, Gallo was terminated for cause based upon two acts of insubordination: (1) her act of contacting the disgruntled Navy customer in contravention of the repeated directives not to do so, and (2) her refusal to work on the training project assigned by her supervisor. This action followed.

On October 3, 2006, the district court granted PSD's motion for summary judgment as to all claims. With regard to Gallo's employment claims, the district court held that Gallo had failed to establish a prima facie case of employment discrimination based on gender because she failed to demonstrate that she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action. In addition, the district court noted that PSD had articulated legitimate nondiscriminatory reasons for terminating Gallo which Gallo had failed to show were a mere pretext for gender discrimination. See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc). The district court rejected Gallo's hostile work environment claim because plaintiff failed to establish a prima facie case that the activities she complained about were motivated by her gender and, in any event, were not sufficiently severe or pervasive to establish an abusive working environment. See Baqir v. Principi, 434 F.3d 733, 745-46 (4th Cir. 2006). With regard to Gallo's retaliation claim, the district court rejected the claim because Gallo failed to present

7

sufficient evidence of a causal link between her termination and the complaint of gender discrimination or of a hostile work environment.  Gallo's breach of contract claim arises from a written stock option agreement which provides an employee such as Gallo thirty days following termination to exercise her options, unless the termination is for cause.  Because plaintiff's termination for insubordination constituted cause under the agreement, the district court granted summary judgment to PSD on this state law claim as well.

Having thoroughly reviewed the district court's opinion and the parties' briefs and submissions on appeal, and having heard oral argument in this case, we conclude that the district court did not err in granting summary judgment in favor of PSD.  To the extent the district court did not separately address Gallo's claim that she could not be terminated for contacting the Navy customer in contravention of her employer's directives not to do so because this act constituted protected activity under the opposition clause of Title VII, see 42 U.S.C.A. § 2000e-3(a) (West 2003), we find no merit to this additional assertion.  Because we affirm the district court's grant of summary judgment on the merits of all claims, we need not address Gallo's appeal of the district court's decision to grant PSD's motion to strike her demand for a jury trial.

AFFIRMED

8